## FRENCH v. WHITTLESEY.

(Supreme Court, Special Term, Suffolk County. August 17, 1894.)

1. TAXATION—WARRANT—NONRESIDENTS.
   Where the name of a nonresident owner of land is placed on the tax assessment roll partly in the column headed "Description of Property," and partly in the preceding column, the warrant to the tax collector, directing him to proceed against "those persons named in the assessment roll, other than such persons as are named as a part of the description of the land of nonresidents described therein," does not authorize the collector to proceed personally against such owner. Sanders v. Downs, 141 N. Y. 422, 36 N. E. 391, distinguished.

2. SAME—TAX TITLES.
   A tax title based on an assessment in which 2½ lots are valued and assessed as a whole, instead of separately by lots, as required by 1 Rev. St. p. 391, § 12, is fatally defective.

3. SAME—EVIDENCE—ASSESSMENT ROLL.
   Where an assessment roll has been in the custody of the county treasurer for 12 years, as a part of the public records, it is admissible in evidence in a case where the validity of the tax title is questioned.

Action by Stephen B. French against George D. Whittlesey to prevent, on the grounds of superior title and fraud, foreclosure of a mortgage on land purchased by plaintiff's assignor at a tax sale. Judgment for defendant.

Daniel G. Rollins, for plaintiff.

B. K. Payne, for defendant.

BARTLETT, J. On June 12, 1873, Christopher C. Loomis, a non-resident of this state, was the owner of a house and 2½ lots of land in Sag Harbor. On that date he made a mortgage covering these lots, and other lands in the town of East Hampton, to George D. Whittlesey. The Sag Harbor lots were subsequently sold by the county treasurer for the nonpayment of taxes. George C. Campbell became the purchaser, and subsequently assigned his rights as purchaser to Stephen B. French. Mr. Whittlesey, in 1892, took proceedings to foreclose his mortgage by advertisement; and the present suit was instituted by Mr. French to prevent the foreclosure of that mortgage, and procure its cancellation, so far as it affects the Sag Harbor lots, on two grounds—First, because his tax title is superior to that of the mortgagee; and, secondly, because the mortgage was fraudulent and void.

There is no evidence in the case which would tend to support a finding that there was any fraud in the making of the mortgage. I so held upon the trial, and in this view the learned counsel for the plaintiff acquiesced. The only question that remains for consideration, therefore, is the validity of the plaintiff's tax title.

The title cannot be defeated by the application of the doctrine laid down in the case of Sanders v. Downs, 141 N. Y. 422, 36 N. E. 391. The ground upon which that case was decided at special term was that the name of the nonresident owner was placed upon the assessment roll in such a position that the warrant to the tax collector amounted to a direction to that officer to proceed against the owner personally in order to enforce payment of the tax. It did not seem to me possible, in that case, upon any fair construction of the contents of the assessment roll, to say that the name of Mr. Sanders was placed where it was placed simply as a part of the description of the property assessed. It appeared in a different column, wholly separated from the description. In the present case, however, there is no such separation. In order to make no mistake on this point, I concluded to defer my decision until I should again have an opportunity to visit Riverhead, and make a personal inspection of the assessment roll, inasmuch as the copy furnished to me with papers and briefs was not a fac simile of the entries relating to the property in suit. An examination of the book itself, which I made while holding the spring circuit, shows that the name of Mr. Loomis was really used only as a part of the description of the property. That description is not wholly in the column headed "Description of Property," but runs across into the column preceding it. The warrant to the collector of the town of East Hampton directs him to proceed, by distress and sale for the nonpayment of taxes, against "those persons named in the assessment rolls, other than such persons as are named as a part of the description of the lands of nonresidents described therein." The name of Mr. Loomis appears in such a position that I do not think it would occur to any officer that this direction in the warrant authorized him to proceed personally against Mr. Loomis. The mere presence of his name in the description constitutes no objection whatever to the validity of the assessment. In Sanders v. Downs, supra, the court of appeals itself says:

"There certainly can be no objection to the insertion of the name of the nonresident nor of lands in the second column, for the purpose of describing or identifying the lands, and in many cases that may be necessary."

See, also, Collins v. Long Island City, 132 N. Y. 325, 30 N. E. 835.

But a much more substantial objection to this assessment exists. The property is described as consisting of a house and $2\frac{1}{2}$ lots. Where the land to be assessed is a tract which is subdivided into lots (and the description in this case clearly indicates that this is such land), the law makes it the duty of the assessors to set down in the second column of the roll, and opposite the number of each lot, the quantity of land therein liable to taxation, and to set down in the third column, and opposite the quantity, the valuation

of such quantity. 1 Rev. St. p. 391, § 12; 3 Birdseye's St. 2964. The assessors of East Hampton, in disregard of this requirement of the statutes, assessed the value of the 2½ lots as a whole, placing it at $400, and imposing upon it a tax of $5.32. This action on their part seems to constitute a fatal defect in the proceedings. The case in this respect closely resembles May v. Traphagen, 139 N. Y. 478, 34 N. E. 1064. There the defendant's lands, consisting of two lots, were included in one valuation, and subjected to a gross tax. The property was situated in Brooklyn, but the charter required the assessors to follow the provisions of the general law, which prescribed a separate statement of the value of the land to be assessed. It was held that their failure to do this, and make such separate statement, rendered the assessment void. "The purchaser takes at his peril the title offered to him," said the court of appeals in this case, "and depends upon the strict right of the public officer to sell. That right rests upon a succession of steps, which must have been substantially taken to reach the result. The failure in the present case to separately state the value for assessment of the premises in question amounted in law to a failure to impose any tax which the owner could he held for." In view of the well-established rule requiring substantial compliance with the assessment laws as the basis of a valid tax title, I do not see how the plaintiff can prevail in this action. This conclusion assumes the sufficiency of the evidence laid before me upon the trial as to the authenticity of the assessment roll, the contents of which have been considered. In their brief the learned counsel for the plaintiff insist that the assessment roll was not properly proved, and should not have been received by the court. It appeared, however, from the testimony of the present county treasurer, that the papers had been in his custody during the 12 years of his official service as public records, and the book in which the entries in question were contained purported to be an account of unpaid taxes of the year 1875 on the lands of nonresidents in the town of East Hampton. The description in the entry is precisely the same as that found in the plaintiff's deed, and there are pencil memoranda on the page referring to the sale to Mr. Campbell, his predecessor in title, and also to the assignment to the plaintiff himself. The evidence indicates, beyond any doubt whatever, that this assessment roll is the foundation of whatever title the plaintiff has; and I think that, produced as it was from the official records in the county treasurer's office, it was sufficiently authenticated to be admissible in evidence. There must be judgment for the defendant, dismissing the complaint, but without costs.